IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH E. DURBIN,

       Petitioner,

v.

THE ATTORNEY GENERAL OF THE
STATE OF PENNSYLVANIA, JAMEY
LUTHER, *Superintendent of SCI- Laurel
Highlands*, and DISTRICT ATTORNEY OF
WASHINGTON COUNTY,

       Respondents.

Civ.A No. 15-884
Chief Magistrate Judge Maureen P. Kelly

Re: ECF No. 12

## MEMORANDUM OPINION

Joseph E. Durbin ("Petitioner") is a state prisoner who has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions for, inter alia, Involuntary Deviate Sexual Intercourse, Corruption of Minors and Aggravated Indecent Assault in connection with his sexual assault of the daughter of a woman whom he was romantically involved with at the time. Because the Petition is time-barred it will be dismissed. Alternatively, because none of the grounds raised merits relief, the Petition will be dismissed.

## I. FACTUAL BACKGROUND

The Superior Court of Pennsylvania, in its opinion affirming the denial of relief in the Post Conviction Relief Act ("PCRA") proceedings, recounted the relevant factual testimony adduced at trial as follows:

> The first prosecution witness was Karen Renz, the mother of minor victim, M.R., and former companion of Defendant. Ms. Renz testified that she became aware of the sexual contact between her daughter and Mr. Durbin after her nephew read about the abuse in [the victim's] diary over Memorial Day weekend in 2001. She stated that her daughter was present when she read the diary and that her daughter was very upset. She then instructed the Defendant to leave her home. Ms. Renz contacted the police and the diary was turned over to them for investigation.

On cross-examination, Ms. Renz testified that she, the Defendant, and her five (5) children, including M.R., spent a considerable amount of time together as a family and that she had never observed any inappropriate touching by the Defendant in relation to M[.]R. Ms. Reitz further stated that M.R. had never informed her of any inappropriate touching in the five (5) years Ms. Renz had a relationship with the Defendant.

On redirect, Ms. Renz stated that the Defendant would often spend time alone with M.R. and would take her places without the permission of Ms. Renz. She characterized the relationship between the Defendant and M.R. as especially close. She also indicated that [M.R.] never recanted or changed her account of the abuse.

Corporal J. David Dryer of the Donegal Township Police testified as to his participation in the investigation. He stated that he was the officer dispatched to the scene following a complaint of child molestation. He found the victim, M.R., crying with her mother, her sister, and her cousin. He stated that they reported that Mr. Durbin had been molesting M.R. and then gave him the diary, directing him to the entries regarding the molestation. He stated that upon reading the entries, he took further statements from those present and then interviewed Mr. Durbin.

On cross-examination, the officer stated that he was not familiar with the Renz household apart from the present allegations, had no knowledge of any other claims of abuse and noticed no signs of the abuse on the victim during the investigation. The officer further testified that M.R. never changed her story regarding these incidents.

Prior to the victim testifying, the Court and counsel engaged in a lengthy sidebar regarding the admissibility of the diary, due to the fact that it referenced incidents involving the Defendant and two other minors. The Court and counsel agreed not to circulate the diary to the jury. Further, M.R. was permitted only to testify that this was her diary, that she did write about inappropriate contact with the Defendant, and that her cousin's reading of the diary stalled [sic] the investigation. M.R. could then describe the inappropriate contact, but only as it related to herself.

The victim, M.R., age 13 at the time of the trial, testified that she had not intended for anyone to read her diary. She explained that it was just a coincidence that her cousin read a page referencing the molestation. M.R. testified that she was embarrassed to learn that her cousin had read her diary and tried to prevent him from showing it to her mother. She further testified that the molestation began about a year after the Defendant began dating her mother and continued until her mother discovered the relationship. The molestation occurred in her mother's bedroom, in the Defendant's trailer, and in various other deserted areas. M.R. stated that the Defendant would tell her that she should only lose her virginity to him and that he would marry her. She also said that Mr. Durbin told her that if anyone found out about the molestation, her mother would be hurt. M.R. testified that the molestation consisted of the Defendant placing his erect penis in her mouth on at least ten (10) to fifteen (15) different occasions, attempting to place his erect penis in her vagina on more than twenty (20) occasions, placing his fingers in her vagina on numerous occasions, and touching her breasts and buttocks. The victim testified that she did not like what the Defendant was doing to her, but did not say anything

2

for fear of him hurting her mother. On cross-examination, M.R. stated that most of the sexual encounters between herself and Mr. Durbin occurred in the time period between when he returned to the home after work and when he picked up the victim's mother from her place of employment.

Following the victim's testimony, Ethan Ward, Chief of Police for Donegal Township, testified. Chief Ward testified that the victim related to police that the incidents of molestation occurred over a period of years. He further provided that the physical examination came back as inconclusive. Chief Ward testified that, in all of the interviews, the victim never recanted her statements or gave inconsistent accounts. At the close of the Commonwealth's case, the Court dismissed the charge of Unlawful Contact or Communication with a Minor.

The defense called the victim's cousin, Robert Ealy, who first discovered the diary. Mr. Ealy, age 15, stated that he found the diary in the living room while searching for paper, and became concerned when he saw the word "molest". He stated that he immediately contacted his aunt, Karen Renz, the victim's mother, and took the diary to her. He testified that when the victim saw him approaching her mother to deliver the diary, she became upset and attempted to stop him.

The defense then called Virginia Wright, a longtime family friend of the Defendant, as a character witness. At a sidebar, the Commonwealth indicated that, if Ms. Wright testified to the Defendant's good character, they would be introducing evidence of the same character trait. The Assistant District Attorney asked if defense counsel was aware of the Defendant's prior indecent assault convictions in other slates [sic]. At that point, defense counsel ceased direct examination of Ms. Wright.

Following another sidebar regarding the introduction of the results of the medical examination, the defense chose not to introduce the entire report into evidence. The defense further chose not to request a recess in order to find and produce Melanie Caldwell. Ms. Caldwell was the nurse involved in the medical examination of the victim and failed to appear, even though she had been subpoenaed by the defense. Mr. Durbin was advised of his rights to testify and to remain silent. Following consultation with Attorney Winter, he chose not to testify.

The victim was next called as a hostile witness for the purpose of showing that her testimony regarding the place of the last sexual encounter was inconsistent with her preliminary hearing testimony. After another sidebar, the Court permitted the Defendant to call M.R. The victim read her preliminary hearing testimony and stated that the incident referenced at that hearing was, in fact, the last sexual encounter with the Defendant.

Nurse Caldwell finally appeared, but the Defendant's counsel informed the Court that the defense no longer wished to call her to testify and would simply rely on the information regarding the inconclusive nature of the medical exam, which had previously been testified to by Chief Ward.

The Defendant changed his mind and wanted to take the stand. Attorney Winter again reviewed with Mr. Durbin his right to remain silent. The Defendant responded that he understood his right and was taking the stand knowingly and voluntarily. Mr. Durbin testified that he had a good relationship with the victim, her mother and family. He stated that he considered himself a father to the victim and her siblings, and would never do anything to hurt them. The Defendant stated that any touching that could be considered inappropriate might have been brushing up

against them in the hall or maybe giving the victim a big hug. On cross-examination, the Assistant District Attorney asked Defendant if he "had been deceptive about [his] past to [Ms. Renz]." Mr. Durbin admitted that he had lied to Ms. Renz about his past because he felt she would leave him if she knew. The defense then rested. It should be noted that neither side elaborated on the references to Mr. Durbin's past.

Com. v. Durbin, 1713 WDA 2013, 2014 WL 10917392, at *6 - 8 (Pa. Super. June 4, 2014) (quoting the PCRA trial court opinion).

## II. PROCEDURAL HISTORY

### A. State Court Procedural History

The Superior Court described the procedural history of the case as follows:

Following a jury trial on July 15, 2002, Appellant was convicted of the aforementioned crimes. On August 20, 2002, Appellant filed an application for the appointment of new counsel, alleging that Appellant's trial counsel provided ineffective assistance of counsel. The court conducted a sentencing hearing on October 28, 2002, after which it sentenced Appellant to the above term of incarceration and granted Appellant's application for new court-appointed counsel. On November 7, 2002, Appellant filed post-sentence motions. At the hearing on the motions, Appellant requested, and was granted, permission to withdraw his claim of ineffective assistance of counsel and his claim that the Commonwealth's evidence was insufficient to support the jury verdict. Thereafter, the court entered an order denying Appellant's post-sentence motions. Appellant timely filed an appeal to this Court. This Court affirmed the judgment of sentence on November 10, 2003. *Commonwealth v. Durbin,* 382 WDA 2003 (Pa. Super. Nov.10, 2003) (unpublished memorandum). Appellant subsequently filed a petition for allowance of appeal to the Pennsylvania Supreme Court on November 26, 2003; it was denied on April 14, 2004. *Commonwealth v. Durbin,* 848 A.2d 927 (Pa. x 2004).

On May 31, 2005, Appellant filed a PCRA petition. Appellant was appointed counsel and an amended PCRA petition was filed on October 11, 2007. On November 29, 2007, the petition was dismissed as untimely. Appellant filed an appeal from this order on December 17, 2007. On August 6, 2008, this Court vacated the PCRA court's order and remanded the case to the PCRA court for consideration of the issues raised in Appellant's petition. *Commonwealth v. Durbin,* 961 A.2d 1273 (Pa. Super. 2008) (unpublished memorandum).

Pursuant to the remand, the PCRA court ordered Appellant to file an amended PCRA petition on June 22, 2009. Almost one year later, on June 16, 2010, Appellant complied. The Commonwealth filed a response to the petition on November 7, 2011. On December 17, 2012, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing. The court ultimately dismissed the petition on October 2, 2013. This timely appeal followed.

Id. at *1 (footnotes omitted). The Superior Court affirmed the denial of PCRA relief on June 4, 2014. Petitioner then filed a timely Petition for Allowance of Appeal in the Pennsylvania Supreme Court, which denied it on December 17, 2014. Com. v. Durbin, 105 A.3d 735 (Pa. Dec. 17, 2014) (Table).

### B. Federal Court Procedural History

Petitioner paid the filing fee and the Petition was filed on September 21, 2015. ECF No. 4. In the Petition, he raised the following four grounds for relief:

> **GROUND ONE:** WAS [sic] petitioners Federal Constitutional Rights violated under the color of law when there was adjudication contrary to Federal presedents [sic] determined by United State[s] SUPREME COURT. . . .
> The commonwealth failed to bring the case to trial within 180 days of the complaint being filed. Which is unreasonable application of clearly established law.
> US 6 Amendment right to speedy trial
> US 14 Amendment the equal protection of the lwa [sic].

ECF No. 4 at 5.

> **GROUND TWO:** Petitioner['s] claims was [sic] adjudicated contrary to, and involved unreasonable application of clearly established Federal law as determined by the supremr [sic] court of the UNUTED [sic] STATES…
> The right to have compulsory process for obtaining witnesses in petitioner favor, and right to confrontation clause[.]

Id. at 7.

> **GROUND THREE:** State procedure bar to relief, denial of effective assistance of hybrid representation....
> State of Pennsylvania rule of aPPellate [sic] procedure 3304, where a litigant is represented by an attorney before the court the litigant submits for filling [sic] a petition, motion, brief or any type o [sic] of pleading in the matter it shall not be docketed! So any filling [sic] that is not timely falls on counsel of record, and any motions pleading not filled [sic].

Id. at 8.

> **GROUND FOUR:** Abuse of trial court discretion [sic], Whether the appellant[']s federal constitutional rights were violated due to abuse of trial court discretion

> denying right to speeded [sic] trial was appellant counsel effective in his failure to address clain [sic] on direct appeal.

Id. at 10.

After being granted extensions of time to do so, Respondents filed an Answer, denying that Petitioner was entitled to any relief. ECF No. 17. Respondents also caused the original state trial court record to be transmitted to this Court. Petitioner filed a Response in Opposition to Answer (the "Traverse"). ECF No. 18.

All the parties have consented to have the Magistrate Judge exercise plenary jurisdiction. ECF Nos. 7, 13.

## III. DISCUSSION

**A. The Petition is Time-Barred.**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments and enacted a statute of limitations for petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996. Because Petitioner's habeas Petition was filed after the effective date of the AEDPA, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

The AEDPA statute of limitations:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### 1. The Petition was not filed within one year of the conviction becoming final.

Petitioner's conviction became final on July 13, 2004, which is ninety days after April 14, 2004, the date on which the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal in the direct appeal. Com. v. Durbin, Nos. 608 WAL 2003, 609 WAL (2003), 848 A.2d 927 (Pa. 2004) (Table). See also Kapral v. United States, 166 F.3d 565, 577 (3d 1999); Burns v. Morton, 134 F.3d 109, 111–12 (3d Cir.1998).

Petitioner then had 365[1] days from July 13, 2004 to file his habeas petition in federal court or July 13, 2005. Dwyer v. United States, No. CIV.A. 13-7218 JBS, 2014 WL 2587499, at *2 (D.N.J. June 9, 2014) ("For a one-year limitation period, the expiration date is the anniversary of the triggering event"). However, Petitioner filed his PCRA Petition in state court on May 31, 2005. Com. v. Durbin, 2014 WL 10917392, at *1 ("On May 31, 2005, Appellant filed a PCRA petition."). The filing of the PCRA Petition tolled the statute of limitations. Hence, from July 13, 2004 (the date on which Petitioner's conviction became final) to May 31, 2005 (the date on which Petitioner filed his PCRA petition), a total of 322 out of the 365 days were used. In calculating the AEDPA statute of limitations, this Court utilizes the method of counting provided for in Fed. R.

---

[1] For purposes of AEDPA's one-year statute of limitations, a "year" means 365 days. See Patterson v. Stewart, 251 F.3d 1243, 1247 (9th Cir. 2001).

Civ. P. 6. Accordingly, Petitioner only had 43 days remaining in which to timely file his habeas petition after his PCRA Petition ceased to be pending. Petitioner's PCRA petition ceased to be pending on December 17, 2014, the date on which the Pennsylvania Supreme Court denied the Petition for Allowance of Appeal in Petitioner's PCRA proceedings. Com. v. Durbin, No. 289 WAL, 105 A.3d 735 (Pa. 2014) (Table). See also Stokes v. District Attorney, 247 F.3d 539, 543 (3d Cir. 2001) (time during which a prisoner may file a certiorari petition from the denial of his state post-conviction petition does not toll the AEDPA limitations period). As such, Petitioner only had until January 29, 2015, which is 43 days after December 17, 2014, to file his Petition.

We will deem the present case to have been filed, at the earliest, on July 6, 2015 pursuant to the so-called prisoner mail box rule. Cromwell v. Keane, 27 F. App'x 13 (2d Cir. 2001) (for prisoner mail box rule, a prisoner is deemed to file his pleading on the date which he hands it to prison officials for mailing; in the absence of evidence as to when this is, the court should deem the date whereon the prisoner signed his IFP application as the date whereon he handed his pleading to the prison officials). We note that Petitioner did not sign his IFP Motion nor did he sign his Petition. However, the earliest Petitioner could have handed his Petition to the prison authorities is July 6, 2015, which is the date of the printout of his prisoner account statement that accompanied his IFP Motion and his Petition. ECF No. 1 at 4. In this regard, we note that the Clerk's Office received and docketed Petitioner's IFP Motion as of July 9, 2015. ECF No. 1. Hence, from December 17, 2014 (the date on which Petitioner's PCRA Petition ceased to be pending) until July 6, 2015 (the earliest date on which we deem the present Petition was filed pursuant to the prisoner mail box rule), a total of 201 days passed. Given that Petitioner only had

43 days left on his one-year statute of limitations, the present Petition violates AEDPA's statute of limitation because it is late by 158 days.

Accordingly, the Petition is untimely filed and will be dismissed as such.[2]

**B. Petitioner's Four Grounds Do Not Merit Relief.**

In the alternative, we find that Petitioner's Grounds do not merit relief in these federal habeas proceedings.

**1. Grounds One and Four do not merit relief.**

Petitioner's Ground One and Ground Four are related. Petitioner's Ground One is that his Sixth Amendment right to a speedy trial was violated when the Commonwealth failed to bring him to trial within 180 days of his being charged. Petitioner's Ground Four is that his "[w]hether the appellant[']s federal constitutional rights were violated due to abuse of trial court discretion denying right to speeded [sic] trial was appellant counsel ineffective in his failure to address claim on direct appeal." ECF No. 4 at 10. We understand Ground Four to be a claim that Petitioner's trial counsel was ineffective for failing to assert on appeal that the trial court abused its discretion in denying Petitioner's Sixth Amendment speedy trial claim.

**a. Ground One is procedurally defaulted.**

Respondents point out that Ground One has been procedurally defaulted because Petitioner never presented a federal constitutional claim of his Sixth Amendment right to a speedy trial being violated. ECF No. 17 ¶ 35. Respondents are correct.

During the direct appeal, the claim that Petitioner's Sixth Amendment right to a speedy

---

[2] We note that, without any analysis, Respondents inexplicably stated "Respondent stipulates that this Petition was timely filed." ECF No. 17 ¶24. We raise the statute of limitations sua sponte as is permitted by U.S. v. Bendolph, 409 F.3d 155, 158 (3d Cir. 2005). We find there is no prejudice to Petitioner in doing so given that we also address his four Grounds for relief on the basis other than the statute of limitations. Fed.R.Civ. P. 59 provides Petitioner with an opportunity to be heard.

9

trial was violated could have been raised but was not. Therefore, we find that this precise issue was procedurally defaulted.

We note that a state law issue of whether Petitioner's rights under Pa. R. Crim. P. 600[3] were violated was in fact raised by motion in the trial court and the trial court, pursuant to the Rule, granted Petitioner release on his own recognizance because the Commonwealth had not brought him to trial within 180 days of the complaint having been filed. Given that Petitioner

---

[3] The version of Pa. R. Crim. P. 600 in effect as of April 2, 2001 and applicable in May 2001 when the criminal complaint was filed against Petitioner, provided in relevant part as follows:

> Rule 600. Prompt Trial
>   (A)(1) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than 270 days from the date on which the complaint is filed.
>   (2) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.
>   (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.
>   (4) Trial in a court case that is transferred from the juvenile court to the trial or criminal division shall commence in accordance with the provision set out in paragraphs (A)(2) and (A)(3) except that the time is to run from the date of filing the transfer order.
>   (B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.
>   (C) In determining the period for commencement of trial, there shall be excluded therefrom:
>   (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;
>   (2) any period of time for which the defendant expressly waives Rule **600**;
>   (3) such period of delay at any stage of the proceedings as results from:
>         (a) the unavailability of the defendant or the defendant's attorney;
>         (b) any continuance granted at the request of the defendant or the defendant's attorney.

procedurally defaulted Ground One, we are not surprised that he raises the claim in Ground Four that his direct appeal counsel was ineffective for failing to raise the issue that Petitioner's Sixth Amendment speedy trial rights were violated. In fact, Petitioner raised this very claim in his appeal during the PCRA proceedings.[4]

While the State Courts addressed the issue of whether Petitioner's trial and/or appellate

---

[4] The claims that Petitioner raised in his direct appeal were as follows:

> 1. Whether the trial court erred in finding that the guilty verdicts were not against the weight of the evidence?
> 2. Whether the trial court erred in refusing to allow the jury to hear a reading of M.R.'s [i.e., the victim's] testimony when the jury requested such reading in a question to the court?
> 2. Whether the trial court erred in finding that it had not abused its discretion in sentencing Durbin to an aggregate prison term of 11-22 years?

Superior Court slip op. on direct appeal at 2 – 3 (quoting Petitioner's Direct Appeal Brief) which is attached hereto as an Appendix.

> The claims raised in Petitioner's PCRA appeal to the Superior Court were:
>
> WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL ALIBI WITNESS?
>
> WEHTHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO PRESENT CHARACTER WITNESS?
>
> WHETHER COUNSEL WAS INEFFECTIVE FOR FAILURE TO QUESTION THE COMPETENCE OF A 13 YEAR OLD WITNESS WHO WAS THE ACCUSER IN A SEXUAL ABUSE CASE?
>
> WHETHER THE APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATION [sic] DUE TO A DENIAL OF APPELLANT'S MOTION TO DISMISS RULE 600?
>
> WHETHER COUNSEL WAS INEFFECTIVE FOR FAILURE TO ADDRESS WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S RULE 600 MOTION AND NOT ADDRESSING APPPELLANT'S CONSTITUTION [sic] RIGHT TO A SPEEDY TRIAL ON APPEAL?

Brief for Petitioner, 2013 WL 8656549, at *1 - 2 (Pa. Super. Dec. 9, 2013).

counsel were ineffective for failing to raise Rule 600 violations on appeal, the state courts did not address the issue of whether trial and/or appellate counsel were ineffective for failing to raise a Sixth Amendment speedy trial claim. Com. v. Durbin, 2014 WL 10917392, at *15. The state courts failed to address this particular claim of trial and/or appellate counsel's ineffectiveness for failure to raise a Sixth Amendment speedy trial claim (in addition to the state law Rule 600 claim) notwithstanding that Petitioner specifically raised such a claim. Brief for Petitioner, 2013 WL 8656549, at *2 ("WHETHER COUNSEL WAS INEFFECTIVE FOR FAILURE TO ADDRESS WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S RULE 600 MOTION AND **NOT ADDRESSING APPPELLANT'S CONSTITUTION** [sic] **RIGHT TO A SPEEDY TRIAL ON APPEAL**?") (emphasis added). In situations such as this, a federal court may address the claim *de novo*. Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006) ("If the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the claim.").

Providing de novo review to the claim that Petitioner's counsel were ineffective for failing to raise a claim that Petitioner's Sixth Amendment speedy trial rights was violated, we have no hesitancy in concluding that the claim is meritless. This is because counsel cannot be ineffective for failing to raise a meritless claim. Werts v. Vaughn, 228 F.3d at 203 ("Moreover, counsel cannot be deemed ineffective for failing to raise a meritless claim."). The claim that Petitioner's speedy trial rights under the Sixth Amendment were violated is simply meritless as we conclude below.[5]

---

[5] Even though Petitioner procedurally defaulted Ground One, we directly address Ground One in the course of analyzing the ineffectiveness claim raised in Ground Four under the unreasonableness prong of the ineffectiveness test promulgated by Strickland v. Washington, 466 U.S. 668 (1984).

**b. There was no presumptively prejudicial delay.**

The seminal case regarding Constitutional requirements for a speedy trial was Barker v. Wingo, 407 U.S. 514 (1972), which set out the governing standard for determining whether an accused's right to a speedy trial has been violated and announced a four factor test: 1) the length of delay; 2) who is responsible for the delay; 3) whether the accused asserted his right to a speedy trial in the state tribunals and 4) whether the delay caused prejudice. Id. at 530. The United States Court of Appeals for the Third Circuit has explained:

> The threshold question under Barker is whether the length of delay was sufficient to trigger analysis of the remaining factors. This involves "a double enquiry." Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). "In other words, a court first decides whether the delay is long enough that it should trigger analysis of the other *Barker* factors.... If it is, the length of the delay is also separately weighed in the court's analysis of the remaining factors." Velazquez, 749 F.3d at 174 (citations omitted). The length of delay is measured "from the date of arrest or indictment, whichever is earlier, until the start of trial." United States v. Battis, 589 F.3d 673, 678 (3d Cir. 2009) (citing Hakeem, 990 F.2d at 760).

U.S. v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014)

In this case, we find that Petitioner has not established even presumptively prejudicial delay so as to require further analysis of the four Barker v. Wingo prongs.

Petitioner was first charged with criminal activity in connection with the convictions which he attacks herein on May 29, 2001. Petitioner's trial commenced on July 15, 2002 which is only 412 days later. We note however that Petitioner at first pleaded guilty to some of the charges on April 1, 2002, and then filed a Motion to Withdraw the guilty plea on April 17, 2002, which was granted by the state courts on May 17, 2002. The time between April 1, 2002 and May 17, 2002, which amounts to 46 days, is excluded from the calculation of a speedy trial violation under the Sixth Amendment. U.S. v. Wilson, 216 F. Supp. 3d 566, 578 (E.D. Pa. 2016) ("Nor can the delay resulting from the withdrawal of the plea is be [sic] attributed to the government. The time a

13

trial is delayed due to the entry and subsequent withdrawal of a guilty plea is not chargeable to the government and does not result in a speedy trial violation.") (citing, *inter alia*, United States v. Ewell, 383 U.S. 116, 120 (1966) (permitting retrial despite delay resulting from guilty plea being set aside because of defective indictment); United States v. Doria, 891 F.2d 296 (9th Cir. 1989) (holding that the government was not responsible for delay from withdrawal of guilty plea); United States v. Herman, 576 F.2d 1139, 1145 (5th Cir. 1978) (holding that defendant was responsible for the delay from the withdrawal of his guilty plea)). Subtracting these 46 days from the 412 days between the date of the criminal charges being filed to the date of the trial yields a result of 366 days, which means that Petitioner was brought to trial within 366 days of his being charged and 367 days of his being arrested for the charges at issue herein when the time attributable to him is excluded. U.S. v. Wilson, 216 F. Supp. 3d 566, 576 (E.D. Pa. 2016) "If the delay is short enough—less than approximately one year—then the court can rely on that factor alone and need not consider the other factors. *See Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Once the delay passes that threshold, analysis of the other factors is triggered, with the length of the delay 'also separately weighed in the court's analysis of the remaining factors.' *Velazquez*, 749 F.3d at 174.").

Instantly, we find the delay of approximately 367 days (between Petitioner's arrest on May 28, 2001) and Petitioner being brought to trial to not be "presumptively prejudicial" and hence, Petitioner has not established any Sixth Amendment speedy trial violation. West v. Howell, 46 F.3d 67 (5th Cir. 1995) ("Although the delay in this case was approximately 13 months, we agree with the district court that the delay is not presumptively prejudicial"). Cf. U.S. v. Claxton, 766 F.3d 280, 294 (3d Cir. 2014) ("In the present case, both parties concede that review of the remaining factors is necessary because the period of time between Claxton's indictment and trial sufficiently exceeds the fourteen-month threshold recognized in *Hakeem*."). See also Amos v.

Thornton, 646 F.3d 199, 206 (5th Cir. 2011) ("The delay between arrest or indictment and trial crosses the line from "ordinary" to "presumptively prejudicial" somewhere around the one-year mark.").

In the alternative, even if we were to analyze the other Barker v. Wingo factors, we would find that Petitioner failed to carry his burden to show a Sixth Amendment speedy trial violation.

Accordingly, Ground One and Ground Four do not merit federal habeas relief.

**2. Ground Two is meritless.**

Petitioner claims that his rights to have compulsory process to obtain witnesses and to confront witnesses were violated. Respondents have difficulty interpreting this claim. ECF No. 17 ¶ 38. Nevertheless, Respondents point out that "Petitioner has not presented this claim, or its substantial equivalent, to the state courts for review and it is, therefore, subject to dismissal on exhaustion and procedural default grounds." Id.

We agree, Petitioner never presented the claims set forth in Ground Two to the state courts. Accordingly, we find Ground Two to be procedurally defaulted and should be dismissed as such.[6]

To the extent that Ground Two is a variation on the claims that his trial counsel was ineffective for failing to call character witnesses, and/or so called alibi witnesses, and/or credibility-bolstering witnesses, Petitioner fails to establish that the state court's adjudication of these claims of ineffectiveness were contrary to or an unreasonable application of United States Supreme Court precedent regarding ineffective assistance of counsel. See Com. v. Durbin, 2014 WL 10917392, at *9 – *12 (state court analysis of the ineffectiveness claims).

---

[6] We have carefully reviewed Petitioner's Traverse, ECF No. 18, and understand that Petitioner's invocation of multiple claims of counsel's ineffectiveness to constitute an argument for "cause and prejudice" to excuse Petitioner's procedural default of his Grounds for relief. However, we find either that Petitioner failed to rebut the presumption of reasonableness of counsels' actions or inactions and Petitioner failed to establish that any such acts or inactions prejudiced him in light of the evidence of Petitioner's guilt.

### 2. Ground Three is meritless.

In Ground Three, Petitioner appears to be complaining about the Pennsylvania state court rule against hybrid representation, specifically Pa. R.A.P. 3304.[7] Respondents point out that Petitioner never raised this claim in the state courts and, therefore, the claim is procedurally defaulted. We agree that Ground Three is procedurally defaulted as having never been raised before the state courts.

Alternatively, Ground Three is meritless as there is no constitutional right to hybrid representation. In re Green, 637 F. App'x 62, 63 (3d Cir. 2016) ("Green is not entitled to mandamus relief regarding that order because there is no right to hybrid representation. *See United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012)."); Wilson v. Hurt, 29 F. App'x 324, 327 (6th Cir. 2002) ("he has no constitutional right to demand 'hybrid representation'"); Myers v. Johnson, 76 F.3d 1330, 1335 (5th Cir. 1996) ("there is no constitutional right to hybrid representation"); U.S. v. Einfeldt, 138 F.3d 373, 378 (8th Cir. 1998) ("There is no constitutional right to hybrid representation").

Accordingly, Ground Three does not merit any relief in these federal habeas proceedings.

## IV. CERTIFICATE OF APPEALABILITY

Because jurists of reason would not find the foregoing analysis debatable, a Certificate of Appealability is denied.

---

[7] Pa. R. App. P. 3304 provides that:

> Where a litigant is represented by an attorney before the Court and the litigant submits for filing a petition, motion, brief or any other type of pleading in the matter, it shall not be docketed but forwarded to counsel of record.

**V. CONCLUSION**

For the foregoing reasons, we find that the Petition is time-barred. Alternatively, we find that none of the Grounds raised in the Petition merit federal habeas relief and, therefore the Petition is dismissed and a certificate of appealability is denied.

BY THE COURT:

s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Date: December 1, 2017

cc: JOSEPH E. DURBIN
FD9623
5706 Glades Pike
P.O. Box 631
Somerset, PA 15501-0631

All Counsel of Record via CM-ECF

# APPENDIX